case number 15-3604 Scott Hutchison v. John Parent case number 16-4194 Scott Hutchison v. John Parent and case number 18-3305 Scott Hutchison v. John Parent or arguments not to exceed 15 minutes per side Mr. Michael Keith Robertson for the appellant cross-appellee Good morning your honors may it please the court Michael Robertson on behalf of John R. Parent the appellant and cross-appellee in this case I'd like to reserve four minutes of time for rebuttal and to address any issues on cross appeal as well When a business relationship breaks up parties in Ohio are required to litigate the causes of that breakup in one action if they choose to bring another action or if they do not bring them within that first action they are barred from relitigating under Ohio's rule 13a and res judicata Now the parties we have brought I'll submit six different claims however there's really only one issue that needs to be addressed The purpose behind that rule is what? I think that comes directly out of the first paragraph of Rettigar and Rettig says look when a business breaks apart we have to consider all this in one action and there are a number of reasons for that one and I think Rettig goes to this directly but there could be duplication of effort on behalf of the parties in the court and it could lead to down the road inconsistent verdicts and findings by juries and I think that absolutely happened in this case Now in addressing this res judicata rule 13 issue there's really only two points that I'd like to get across to the court and those are one the interplay between rule 13 and rule 41 and I think that's what really caused some confusion with the district court and the district court summary judgment memorandum opinion and then two once we actually kind of figure out what the proper standard is to look at under rule 13 and we apply that to this case Ohio law is clear that when parties seek the accounting of the various rights, liabilities and obligations they have towards one another in a business arrangement and they want to get all that out on the table those have to be addressed in one case So going back to my first point on rule 41 and rule 13 and kind of what happened here Rule 41 goes to the ability for claims to be independently adjudicated Now independently adjudicated goes purely to jurisdiction that says okay if we dismiss these claims does the court still have jurisdiction to be able to hear the counterclaims or is the court going to be left in a position where they don't have the power anymore they can't possibly hear these counterclaims that's what rule 41 addresses with by independently adjudicated Now we would submit your honor that of course these claims could be independently adjudicated that is not an issue we would submit that Mr. Hutchison was free to dismiss under rule 41 he was free to dismiss his claims without prejudice what without prejudice means is that there was no adjudication on the merits at that time however once he did that then rule 13 kicks in and rule 13 kicks in as applied to our counterclaims in the state court action so our state court counterclaims were in the driver's seat at that point and rule 13 then applied to that and said okay now that we have your counterclaims as the operative claims here is there a pleading out there where we would say someone has to bring a compulsory counterclaim to this and yes Hutchison had his answer to our counterclaims on the docket and he was required to amend that under rule 13 F to then reassert his compulsory counterclaims so that's how this should have gone he was free to dismiss but he had to live with the consequences of his dismissal so you're saying he was free to dismiss his claims but he should have brought the same claims he could dismiss those claims in state court but he should have brought the state the same claims as counterclaims mandatory compulsory counterclaims to your that's exactly right your honor to your counterclaims which are now the claims it gets a little confusing I understand okay but if we what's our standard of review because you know five years have passed there's been all this litigation and so what you're asking us for is to undo five years of litigation and a jury verdict and on the ground that these counterclaims should have been or the claims should have been made counterclaims and the lawsuit in federal court never should have been filed exactly this case should have been over five years ago in summary judgment when we raise this we don't even need to look to the evidence or the trial transcripts or anything we can look just at the complaint that was filed in federal court and then our counterclaims that were filed in state court and the district court when it walked through its analysis it got this wrong and it ended up resulting in exactly what Rettig and exactly what 13A is trying to prevent which is subsequent litigation that readdresses issues that readdresses everything that already should have been addressed in the first cause of action this entire breakup was supposed to be litigated and so our review is just de novo did the judge apply the proper Ohio Rule 13A standard yes no if we say no he didn't then boom it's over I would submit this is a matter of law that was addressed on summary judgment and with that respect yes it is a de novo review there are other issues I think that we brought up and that the opposing side has brought up that are subject to abuse of discretion but this is purely a matter of law it's purely the federal court looking to Ohio's Rule 13A and saying look was this applied properly Was race judicata involved in this? Sorry? Race judicata? Yes Ohio's Rule 13A and race judicata are kind of combined together and that's how Rettig speaks of this is that Ohio's race judicata law basically embodies the principles in Rule 13 so they're kind of connected but race judicata also embraces other more typical race judicata type claims as well And the Ohio courts have explained all this? I think we don't need to look any further than Rettig your honor we can look at other cases but I think Rettig makes clear that look Rule 13 is part of the body of race judicata law in Ohio and the effects that bringing subsequent claims that should have been brought in a prior action that ends up getting litigated to a judgment and just to be clear your honors that a consent judgment in Ohio is just as good as being litigated on the merits it's subject to same race judicata principles as if it had been fully litigated on the merits Does that answer your question? I'm sorry. So, but we do need to look at some Ohio cases to figure out how that standard cashes out, right? And so I'm wondering on your theory that the district judge didn't apply the right test the right test in Ohio is the logically related test I believe and so can you explain to me with like some level of detail since we don't, we have a consent judgment in Ohio so it's a little hard for me to understand exactly why these claims are logically related and I feel like the briefing was a little bit at a kind of high level of generality and if you can bring it down a little bit Sure. I'm happy to do that your honor. I think how they're related is that you know Rettig and other case laws say look when this business relationship is breaking up everybody needs to get their claims out on the table and we've got to figure out how this gets distributed everybody's cashing out of this business arrangement we've got to see, okay, who owns what who owes who, you know, what amount of money who put in what amount of money and when we look at specific, your honor I think your question was if we look specifically to even just the second cause of action which is paragraph 31 of the complaint where Hutchison asked for an accounting he asked for basically for the court to say look, let's figure out who owed what let's figure out how much money was put in how much money needs to come out and that is the exact flip side, your honor of our counterclaim for misappropriation which is asking, okay, money was put into this but Hutchison, you took some money out we need to figure out how much money you took out because some of that is owed to me so those two claims are exactly mirror opposites of one another they need to be litigated together because they have these common issues okay, what money went in what money at different times came out what assets came out we need to figure out, okay how should this actually be dissolved this business arrangement between us and these issues be finalized and do we apply 13A claim by claim so that some of the we don't look at it as a whole package claim by claim so I understand your misappropriation claim are there other claims that you have a reason to say the claims filed in federal court should have been in state court so I think the misappropriation claim is certainly the strongest because that goes to JPSH, the LLC and that's exactly what's going on with the breach of fiduciary duty the accounting claim and the fraudulent misrepresentation claim however, the $27,000 personal loan this was brought originally as a counterclaim as a personal loan in the counterclaim  it turns out that this was a loan that went from Mr. Parent to JPSH and then Hutchison took that money out and then used it for his own purposes and then he used that money to then buy pay off a loan on an Ohio property that he had purchased however, he doesn't sell that property then until the summer of 2008 which is when all this comes to a head and I want to point your honors I don't think this is necessary for your honors to reach a conclusion but there are instances in the record the trial transcript of 5906 and 5986 as well as 5903 which cites the trial exhibit 190 which is found at 5250 where it's clear that in the summer of 2008 this all comes to a head Hutchison's able to sell this property in Ohio and supposedly he's able to pay back this $27,000 however, that becomes his incentive to then execute the notes and mortgages he admits that and then that's why Hutchison's parent says look, hold off on paying back that $27,000 let's execute these notes and mortgages that's how they get related together down on the ground so it turns out that this counterclaim for $27,000 it turns out that was actually interacting with JPSH once it got re-litigated out and there's one other instance where I think to kind of go show the harm that really happened here when this gets re-litigated is at 5933 through 5934 which touches on the misappropriation claim where we bring this up at trial and we say wait, you know you misappropriated funds from JPSH, correct? and Hutchison denies it even though there's a consent judgment sitting there that's been sitting there for 5 years he denies it and then he goes on to say I had to sign that to get it from state court to federal court so here we have a plaintiff, an Ohio plaintiff excuse me, my time is up I just finished my last thought we have an Ohio plaintiff bringing a case in Ohio litigating it for two and a half years and then admitting that on the eve of trial he's just going to dismiss and file in federal court I'll reserve the rest of my time for the public, thank you Good morning, your honors my name is Rick Kerger I'm here on behalf of Scott Hutchison and it's a particular honor to be in front of Judge Keith the last time I was in this courtroom every seat was filled and I felt like a Christian in the early days when they were surrounded by lions I was arguing on behalf of my client who was on death row the point I want to make is the decision's impact on Scott Hutchison is certainly less than life but it is of great importance to him they make much of the Rettig case in fact, if you read Rettig I don't think it applies at all in Rettig significantly, the defendant opposed the motion to dismiss without prejudice filed his opposition 17 days after the motion to dismiss was filed without prejudice the court in footnote one says this case does not present the issue as to whether a defendant has stopped from asserting rule 13A as a bar to plaintiff's claim where in earlier action the defendant had consented to a dismissal without prejudice that puzzled me because the word consent doesn't appear in any 13, 41, any of the rules so what would it mean? I think in the context of the facts of Rettig it means you didn't object at the time but wait, why would you had a right to dismiss your claims if you wanted to dismiss your claims what would they object to? they would say you don't have a lawful right to dismiss your claims of course you do we've raised much of the claims here if you do then you're barred from litigating against us well but that that claim doesn't arise until you get them to federal court so if you dismiss your claims in state court you have a right to do that there's no I don't know what objection they could make it's unlawful for you to dismiss your claims that can't be right the problem arises when you come and file your claim in federal court at which case at which time they would have a state court harm I guess if you want to call it that and the significance here is the day after the case was dismissed in state court it was refiled in the federal court and that was pending for two months before the consent and judgment was entered in the state court so it was no surprise to them that those claims were coming back up and I would suggest to you based on what the Supreme Court said in Rettig they could have objected to dismissal without prejudice your honor do you have any case in which any Ohio case in which the Ohio courts have said not here there was no objection but you know in a footnote but in a case where they've said oh rule 13a doesn't apply because there was no objection to the law no I do not that issue has not come up apparently but if we go back let's assume Rettig does apply Judge Helmick when he reached his decision noted that look this was a loan between John Parent directed to Scott Hutchison whether it was to JPSH or Scott it was to Scott and the reason was that Scott had claimed at trial he had a business underway before he got involved in the joint venture and with his time spent buying properties going to auctions his business in Ohio had no income he needed to pay his bills and he took these loans not to pay JPSH bills to pay his bills the bills he couldn't pay because he was occupied with JPSH the money came from John Parent to Scott Hutchison it's a freestanding claim which has nothing to do with the principal action and as the court $127,000 that you're talking about it's $127,000 $127,000 yeah and as they said in Reddick if you assume Reddick applies it's a compulsory counterclaim is one which is logically related where separate trials on each would involve a substantial duplication of effort and time by the parties and the courts and Judge Helmick found that was not the case here now at that point Judge Helmick had been intimately involved in the proceedings of the case for three years he knew what the case was about and he said no there's no substantial duplication of effort so we can carve this case carve this claim out and still have Scott's continue is that true with respect to both claims? I understand that you're making the argument with respect to the $127,000 personal loan but what about the misappropriation claim? uh well one that was never fleshed out the only discussion in the state court was of the loans but importantly there has to be I mean are you saying that the claim wasn't presented to the district court with respect to both claims? it was only presented with respect to none of those things were presented to the federal court they were presented to the state court and there was one for misappropriation of funds that's all it said and the consent judgment all it said is misappropriation of funds the money involved $127,000 versus $153,000 there wasn't much importantly but you dismissed all your counterclaims and refiled them in federal court so we have to figure out whether all of your counterclaims are logically related under the Ohio test to the and your honor I would suggest they had no relation at all they dealt with Scott they dealt with John Parent taking advantage of Scott what he did was he cobbled up mortgages that he put on the properties owned by JPSH claiming millions and millions of dollars which he never supported at trial he simply couldn't support those sums because he didn't pay them he did it so he could put mortgages on each of the properties then he took custody of the books and records of the companies I'll take it from this point puts the mortgages on gets the book and record including the checkbook and then doesn't pay a dime on any of the mortgages and then forecloses without notice on Scott and takes his interest and the equity out of those two properties right so I understand that claim but what I'm interested in is how is that claim unrelated to the claims that went forward in state court it's unrelated because there's no substantial relationship between the counterclaims that were asserted in the state court and our claim here that was what Judge Helmick found right but the argument that appellants make is that Judge Helmick used the wrong test he said can these claims be independently adjudicated and he didn't rely on the logical relationship test did he throw out of the same transaction or occurrence so if you think he applied the right test I guess I'm interested in knowing why that's true and how the claims relate or don't relate I guess the loans which are the 80% of the judgment went from John Parent to Scott Hutchison independent the one check was made at JPSH everybody knew it was going to Scott that was the testimony at trial just to pay his bills significantly your honor at trial there was never a point made about race judicata on any issue litigated in the trial or collateral estoppel there was no mention for example this is in the federal court I'm sorry in the federal court no mention of race judicata no mention that any issue being adjudicated in the federal court trial had already been resolved or was barred because of collateral estoppel never came up which I think shows how unrelated the cases were there was no claim for example that Scott Hutchison has been determined to have misappropriated funds that never was presented no claim was made during the trial so we're not saying that any issue I mean their argument is that any issue was precluded or any claim was precluded in the sense of it had already been fully and fairly litigated in the court below it's a slightly different doctrine that it should have been joined with the other issues below and that the dismissal and moving them to federal court violates that sort of mandatory mandatory joinder is what we would call it in criminal procedure and your honor I just suggest that Judge Helmick applied the right test in finding there was no substantial relationship between the counterclaim and our claims in the federal court and that's required to get to Reddick even assuming that Reddick applied I think Reddick's saying basically if you are aware it's being dismissed and maybe refiled you should object because I don't know what consent means there's nothing under rule 13 or rule 41 that says the party has to consent to it but the court said if there is consent then as part I suggest you the only way you can come to consent is a failure to object that's why the court in Reddick noted the fact that the defendant there had objected to the dismissal without prejudice I still come back to I don't know what an objection would look like it's not an objection that the trial court could rule on against you so you say I'd like to voluntarily dismiss my claims and then they did what you would like them to do they say I object and they would say what are your legal grounds for objection and the trial court would say there's nothing for me to I can't grant your motion I think one he could have because the judgment wasn't final in the state court didn't become final until April 12th I believe our case was refiled on February 12th he could have said your honor this should be with prejudice this dismissal because our counterclaims are going to be affected by that case being tried the one that's pending in federal court and you need to prevent that by stepping in now that's the objection that could have been made was not made and would avoid us having this discussion at this point but I still come back to even if you accept that that applies the judge applied the right test under Ohio law of saying there's no judicial economy one of the big parts about it is we don't want to have the court trying the same case twice it didn't it wouldn't and the reason I raised the race to Dakota objection collateral estopel at trial is if they're so related at some point certainly some issue would have come up in the several day trial in federal court that somebody say hey that's been decided already or their claims against Mr. Parent are nothing like what happened to Mr. Hutchison who's been found by the court to have misappropriated funds on his own that's a judicial finding you jurors don't have to worry about it was never said because it wasn't an issue that got resolved there are other issues before the court they would hope you would have time to get to one of which is the extent to which the indicative the submission for indicative of ruling whether Judge Helmick stayed within the ambit of what you sent down to him right so let's so let's talk about that that's on the prejudgment interest argument right no it goes with the just made my mind go blank it goes with whether or not the Indiana cap the split recovery should apply or not that was what that was what was sent back right but in that case what was sent back is should the Indiana cap apply or not and your argument was no no Ohio law applies and so he accepted your argument said oh you're right Ohio law applies that didn't work out so well for you but I don't know how that's I think what we're suggesting is Indiana law would apply to the substantive violations of the fiduciary duty he owed but when you come to the split recovery in Indiana that's something that comes in after the judgment judgment is final before it even arises that is entirely procedural and in a federal court in Ohio that procedural rule stops at the border and doesn't bleed into telling a clerk in the district court in Ohio where you send funds that you don't have because the parties are going to exchange them back and forth and we said that's what should have come out of this not them taking the Ohio cap and asserting this after the fact the Indiana ruling cap is substantive in federal court right that's Gasparini like the Ohio cap yes if the Ohio cap applied right but if we've got an Ohio case where the federal court's applying Ohio law the jury has rendered a judgment under Ohio law the cap is substantive there's no argument that the cap's procedural that'd be foreclosed by Gasparini I think so it I think is a federal court in Ohio when the judgment comes down follows the federal there's nothing on the federal that applies a cap or division of the funds well as to the division I I yes you're right there's no federal cap on damages but Ohio has a substance Ohio has a cap on damages yes Gasparini Gasparini I think that's the name of the case from the US Supreme Court says yeah we think these damages caps are substantive law so I don't know why it doesn't just follow hand and mouth foot and hand hand and hand something like that said in the brief it's a matter we think of procedural rule Erie v. Tompkins says it doesn't have to follow that thank you very much appreciate it thank you Judge your honors I'd like to make just a couple points if I may in rebuttal the first one goes to this objection and Judge Larson I think you're exactly right what would an objection look like in this case we're not talking about a 41A1B dismissal which would require a stipulation signed by all the parties where we were agreeing to the dismissal we're not talking about that this is a 41A1A dismissal which is an action purely on the part of the plaintiff saying hey let me get out of here and as I said in my opening that was totally fine he was allowed to do that and that was without prejudice it's just the fact that he was able to freely dismiss that had to actually live with the consequences under Rule 13 another point just to clarify the $100,000 and the $27,000 those are separate it's not $127,000 two different things in 2006 2007 thank you I don't have a citation in the record off the top of my head but if the court looks to our summary judgment exhibits it'll lay that out also in terms of the independent adjudication I think the court was asking well what would an objection look like and I think this comes into the district court's problem of relying on independent adjudication an objection would be required in an instance where the counter claims are left with no place to go where they can't be litigated in that court there are some examples that come up in the case law for instance if let's say the counter claims fell below the amount of sovereign controversy or let's say there was an issue of sovereign immunity where the initial party bringing the claims had sovereign immunity but then they brought it and then a counter claim was then brought against it if the initial party then dropped they could say wait a second you can't bring that counter claim against me anymore because I have sovereign immunity and then that's when the objecting party would have to say no no you need to stay in here because otherwise I can't bring my claims against you and with the court's indulgence this is not in our briefing but that's an example from Wyandotte Nation versus the City of Kansas 200 F 2nd 1279 District of Kansas that kind of goes to this independent adjudication language and what that really means that means that if you can't have jurisdiction in that court anymore because your opposing party's claims are gone then yeah you need to say something and get those in but that is absolutely not this situation I also want to talk about the duplication of effort I think before I get to that I think opposing counsel also mentioned that this issue of race judicata was raised in our answer in summary judgment not brought back up I think the Cottle case that we cited says look if this was raised before the final jury verdict and the final judgment and you're raising it on appeal that's okay I'll point the court to the Cottle case finally and then the duplication of effort that Redick kind of warns against mentions there are the exact same witnesses and the exact same facts are going to be at issue in these counterclaims and in the claims that are actually litigated the only problem is that we didn't get to actually litigate and flesh out those facts because they had the consent judgment where they wiped it all away I think one final point I'd like to direct the court to two things in Redick one and I just want to make sure I get this quote right where they say claims and counterclaims are offshoots of the same basic controversy where they seek an accounting of the various rights obligations and liabilities springing from the business arrangement that is exactly the situation we have here and I think we need to look no further than Redick itself where the court said okay we have a claim for money on a settlement agreement we have claim for inventory that's owed and we have a claim for telephone bills that are owed. These all are kind of relating to this business relationship falling apart so they all need to be brought together and that your honors is exactly the same situation as we have here Thank you your honors Oh I'm sorry Judge Keith I forgot to ask if you had any questions. No no no no no no. Alright otherwise I'd call counsel back up here for you so alright thank you very much for your arguments Case is submitted if you'd like to call the next case